WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephon Wrays, | No. CV-22-00741-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

At issue is Defendant's motion for summary judgment (Doc. 81), which is fully briefed (Docs. 94, 99) and, as explained below, is granted.

**I.    Background**

On January 8, 2020, Plaintiff was remanded to the custody of the Maricopa County jail to serve a six-day sanction for failing to comply with the terms of his probation. When he arrived, he was ill, apparently suffering from undiagnosed Vally Fever.[1] When he saw the court that day, he said his ankles "are so swole" and that "all this is swole. I can't even really talk right." His attorney in court told the judge "he's clearly having some medical stuff going on. You can see he clearly has a pretty serious infection that he's managing."

---

[1] Plaintiff was seen twice the month before at the Maryvale Hospital Emergency Room with symptoms consistent with Valley Fever. On a December 4, 2019, visit he complained of a two-week cough and a growth on his chin. He had chest x-rays and was discharged with instructions to follow up with his primary care physician. He was seen again at Maryvale Hospital on December 12, 2019, with back pain leg swelling. He was not diagnosed with Valley Fever during either hospital visit.

Considering the facts in the light most favorable to Plaintiff, when he was booked into the jail on January 8, 2020, Plaintiff had an abscess on his chin, problems breathing, a raspy voice, and swollen legs. A medical screening was performed in the jail that day by a registered nurse who failed to question Plaintiff and failed to observe or record any of the objective signs of illness described above. The screening nurse obtained Plaintiff's medical history form the escorting deputy.

After the screening Plaintiff was placed in a "safe cell" because Plaintiff said he would commit suicide if he did not get medical help immediately. Defendant documented that after discussing with nursing, Plaintiff would be admitted to an inmate-provider admission management area for evaluation with a provider. However, Defendant did not go into the cell to examine Plaintiff. Her records show that she failed to recognize objective signs that he was ill, including the chin abscess, the swollen legs, or his increasing pulse rate. From her observations outside the cell, she reported that she did not observe Plaintiff in distress, and claims that he did not tell her of any type of distress or pain.

At 12:34 am on January 10, 2020, Plaintiff saw Dr. Fisher. Plaintiff told him that he was not thinking of harming himself or anyone else, he just wanted to be seen by a provider. A few minutes later he was seen by Defendant, who commented in the medical notes that Plaintiff is a poor historian and noted the growth on his chin, which Plaintiff said he had for about a month. Defendant reviewed the medical records from Maryvale Hospital regarding the care received for the chin abscess. Defendant testified that she prescribed an antibiotic because of his non-resolving abscess, but Plaintiff never received it. Defendant did not take any vitals but had Plaintiff removed from the clinic and sent back to his cell under the escort of two guards.

Plaintiff's response brief notes that from January 9 through January 10, 2020, Plaintiff had nine encounters with medical providers and despite the objective signs of illness, none of the providers noted symptoms or medical issues other than a seriously mentally ill ("SMI") designation, diabetes, alcohol addiction, and opioid addiction. They did not catch his increasing tachycardia.

The next day, January 11, 2020, the morning shift nurse found Plaintiff in his cell clearly altered, groaning, and having difficulty breathing. Plaintiff was wheeled to the clinic. He arrived clearly in distress, non-diaphoretic with a pulse of 137. He was transported to Maryvale Hospital where he was treated for twenty-eight days with a variety of medications, including broad-spectrum antibiotics and antifungal medications.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

Plaintiff brought this action as a Fourteenth Amendment, pre-trial detainee claim. Defendant contends that because Plaintiff was a sentenced prisoner at the time of the relevant events, this really is an Eighth Amendment case. Regardless of whether Plaintiff's claim is considered under the Eighth or the Fourteenth Amendment, one of the elements that must be established is that Defendant caused Plaintiff's injuries. *See Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2016); *Jett v. Penner*, 439 F. 3d 1091, 1096 (9th Cir. 2006).

Plaintiff contends that if Defendant had properly observed and diagnosed him when he first arrived in the jail, Plaintiff would have been sent to the hospital that day and would have received antibiotics a day sooner than he did. Typically, standard of care evidence is based on expert testimony. *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 699 P. 2d 925, 928 (Ariz. Ct. App. 1985). Citing *Rossell v. Volkswagen of Am.*, 709 P.2d 517, 524 (Ariz.

1985), Plaintiff contends that a layman with common knowledge would know an infection needs antibiotics and immediate attention. The Court agrees with Plaintiff that lay persons could reasonably determine that Defendant, a medical provider whose job is to screen prisoners for medical needs, should have recognized the obvious objective signs and symptoms of serious medical issues exhibited by Plaintiff.

It is unnecessary, however, to delve into the issues of standard of care and deliberate indifference. Plaintiff has not presented expert evidence to show that the one-and-a-half-day delay caused him harm. Plaintiff argues that an expert is not necessary because the conduct complained of is so grossly apparent that a layman would readily recognize that delaying the hospital transfer by a day-and-a-half caused his overall condition to worsen. An expert is not required where "no special expertise [is] necessary to draw a causal inference," but expert testimony is required if making the connection between the act and the injury requires specialized knowledge. *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994).

Plaintiff had been suffering from Valley Fever for a substantial period before he was jailed. Less than two days after being seen by medical providers in the jail, he was transferred to Maryvale Hospital where he received extensive treatment for twenty-eight days with multiple medications, including fluconazole, a medication used to treat and prevent fungal infections. Assuming a jury determines that Defendant should have acted sooner and was deliberately indifferent in not doing so, a jury could not determine that Defendant's conduct worsened Plaintiff's disease, that he would have been treated any differently had he been transferred a day-and-a-half sooner, or that the outcome of the treatment would have been different. Linking the cause of Plaintiff's injuries to Defendants' conduct is not readily apparent and therefore medical testimony is required to establish causation. *Rangasan v. Hawaiian Tug & Barge Corp.*, No. Civ. 99-00275 SOM, 2000 WL 1569285, at *3 (D. Haw. Apr. 6, 2000). Plaintiff has not presented such evidence, and therefore will be unable to establish the necessary element of causation at trial.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 81) is **GRANTED**. The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 30th day of September, 2024.

_____
Douglas L. Rayes
Senior United States District Judge